Mara D. Curtis (SBN 268869)
Tanner J. Hendershot (SBN 346841)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8080
Email:    mcurtis@reedsmith.com
          thendershot@reedsmith.com

Attorney for Defendant
A PLACE FOR MOM, INC.
(erroneously sued herein as A PLACE FOR MOM)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR PINEDA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>A PLACE FOR MOM, a Delaware corporation; and DOES 1–50, inclusive,<br><br>Defendants. | Case No.:<br><br>[Superior Court of California, Alameda County Case No.: 24CV076933]<br><br>**DEFENDANT A PLACE FOR MOM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441 AND 1446**<br><br>Complaint Filed:  May 23, 2024<br>Trial Date:       None |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF HECTOR PINEDA, AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant A PLACE FOR MOM, INC. (erroneously sued herein as A PLACE FOR MOM) (hereinafter, "Defendant" or "APFM"), hereby removes this action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California.  Defendant removes this action pursuant to 28 U.S.C. §§ 1332(d) (the Class Action Fairness Act of 2005), 1367, 1441, and 1446 on the following grounds:

## STATEMENT OF JURISDICTION

1.     This Court has jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), which amended 28 U.S.C. §§ 1332 to provide that a putative class action is removable to federal court if the proposed class members number at least 100; the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and one member of the proposed class is a citizen of a state different from any defendant. *See* 28 U.S.C. § 1332(d).  The Act authorizes removal of such actions pursuant to 28 U.S.C. § 1446.  As demonstrated below, this action meets all of CAFA's removal requirements and is timely and properly removed by the filing of this Notice.

2.     This Court has jurisdiction over Plaintiff's remaining representative claim brought under the Private Attorneys General Act (PAGA) under 28 U.S.C. § 1441(c) and, pursuant to 28 U.S.C. § 1367, because it relates to and emanates from the same employment relationship between Plaintiff and/or the allegedly aggrieved employees and APFM, which is the subject of CAFA jurisdiction.

## PLEADINGS, PROCESS, AND ORDERS

3.     Plaintiff Hector Pineda[1] ("Plaintiff") is a former employee of APFM. Plaintiff was employed by APFM from approximately April 10, 2023 until August 17,

---

[1] Plaintiff's last name is Pinedo.  The spelling of Plaintiff's name in the caption of this action (*i.e.*, "Pineda") is incorrect.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

2023.[2]  Declaration of Nicole Suzanne McConnell ("McConnell Decl."), ¶ 5.

4.      On January 16, 2024, Plaintiff caused to be filed a letter with the California Labor & Workforce Development Agency (LWDA) titled "PAGA Notice Pursuant to California Labor Code § 2699", which was served upon APFM via certified mail with return receipt (hereinafter "PAGA Letter").  *See* Defendant A Place For Mom, Inc.'s Request for Judicial Notice in Support of Notice of Removal ("RJN"), Exhibit A.

5.      On May 23, 2024, Plaintiff filed a Complaint in the Superior Court of the State of California in and for the County of Alameda, entitled *Hector Pineda, individually and on behalf of all others similarly situated v. A Place For Mom, a Delaware corporation; et al.*, Case No. 24CV076933 (hereinafter the "Complaint" in the "State Court Action.").

6.      The Complaint is a purported putative class action and representative action alleging the following causes of action against APFM: (1) Violation of California Labor Code §§ 1194 and 1197 and 1197.1 (Unpaid Minimum Wages); (2) Violation of California Labor Code §§510 and 1198 (Unpaid Overtime); (3) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (4) Violation of California Labor Code §§ 226.7 (Unpaid Rest Premiums); (5) Violation of California Labor Code §§ 201, 202 and 203 (Untimely Payment of Final Wages); (6) Violation of California Labor Code §204 (Untimely Payment of Wages); (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of California Labor Code § 246 (Failure to Provide Sick Leave at Correct Rate of Pay); (9) Violation of California Labor Code §1174(d) ( Failure to Keep Requisite Payroll Records); (10) Violation of California Business & Professions Code § 17200 *et seq.*; and (11) Representative Action Pursuant to Private Attorneys General Act of 2004 (California

[2] In connection with his employment with APFM, Plaintiff signed a valid arbitration agreement under which he and APFM mutually agreed to submit all claims arising out of their employment relationship to binding, final arbitration on an individual basis and mutually agreed to waive their right to bring any claim on a class-wide basis.  After removal, APFM intends to move to compel Plaintiff's individual claims to arbitration, dismiss his class-wide claims, and stay the non-individual portions of his representative claim brought under the California Private Attorneys' General Act (PAGA).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Labor Code §2698, *et. seq.*). *See* Complaint ("Compl."), [Caption Page]. Plaintiff's proposed group of putative class members and/or allegedly aggrieved employees includes over 126 employees. McConnell Decl., ¶ 6.

7.     A copy of the Summons, Complaint, Civil Case Cover Sheet, and Alternative Dispute Resolution (ADR) Package was served on Defendant's California registered corporate agent for service of process, Corporation Service Company D.B.A. CSC – Lawyers Incorporating Service on May 28, 2024. Declaration of Michael Bond Iannotti ("Iannotti Decl."), ¶ 3. True and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Alternative Dispute Resolution (ADR) Package are attached hereto, collectively, as Exhibit 1, and incorporated herein by reference as if set forth in full.

8.     On May 29, 2024, Plaintiff filed a Proof of Service of Summons verifying service of the Summons, Complaint, Alternative Dispute Resolution (ADR) Package, Civil Case Cover Sheet, and Notice of Case Management Conference upon APFM on May 28, 2024. A true and correct copy of the Proof of Service of Summons is attached hereto as Exhibit 2 and incorporated herein by reference as if set forth in full.

9.     Defendant A Place For Mom, Inc. filed an Answer to Plaintiff's Complaint on June 27, 2024. A true and correct copy of Defendant A Place For Mom, Inc.'s Answer is attached hereto as Exhibit 3 and incorporated herein by reference as if set forth in full.

10.     To Defendant's knowledge, as of the date of this Notice of Removal, no other parties have been named or served with a copy of the Summons and Complaint. Defendants Does 1–50 are presently unnamed and unknown and, therefore, have not been served with the Complaint. Compl., ¶ 10.

11.     There is a Case Management Conference scheduled for September 20, 2024 in the State Court Action. A true and correct copy of the Notice of Case Management Conference is attached hereto, collectively, as Exhibit 4 and incorporated herein by reference as if set forth in full.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

12.    There are no additional hearings or other proceedings in the State Court Action, and Defendant has not received or filed any papers or pleadings in the State Court Action other than those attached hereto as Exhibits 1–4.

## JURISDICTION PURSUANT TO CAFA

13.    Section 4 of CAFA sets forth the general rule that [t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

14.    Section 4 of CAFA further states that the jurisdictional rule set forth in 28 U.S.C. § 1332(d)(2) applies only to class actions in which the number of members of all proposed plaintiff classes, in the aggregate, is 100 or more.  *See* 28 U.S.C. § 1332(d)(5).

15.    The State Court Action is a civil action over which this Court has jurisdiction pursuant to CAFA, 28 U.S.C. § 1332(d), and this action may be removed by Defendant pursuant to the provisions of 28 U.S.C. § 1441(a), because the proposed plaintiff class consists of at least 100 members, the total amount in controversy exceeds $5,000,000, and there is diversity between at least one proposed class member and one defendant.

16.    Venue is proper with this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  APFM, however, contests the propriety of venue continuing in the Northern District, and may file a motion to transfer venue.

17.    APFM is the only defendant that has been named and served in this matter. Therefore, all defendants that have been named and served join in the removal.

18.    Plaintiff brought this action on behalf of himself and all others deemed similarly situated as a class action pursuant to California Code of Civil Procedure § 382, a state statute authorizing an action to be brought by one or more representative persons

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

as a class action.  Compl., ¶¶ 1, 53.  Plaintiff seeks to represent a proposed class defined as follows: "[a]ll current and former hourly-paid or non-exempt employees of Defendants within the State of California at any time during the period from four years prior to the filing of this Complaint to final judgment."  Compl. ¶ 54.  Plaintiff divides the proposed class into nine subclasses, defined as follows:

    a.  **"Subclass A:** All class members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay in the calculation of the regular rate of pay for overtime pay purposes."

    b.  **"Subclass B:** All class members who received sick compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay in the calculation of the regular rate of pay for overtime pay purposes."

    c.  **"Subclass C:** All class members who earned shift differential pay/ commissions/non-discretionary bonuses/non- discretionary performance pay that was not used to calculate the amount of the meal break or rest break penalty/premium payment."

    d.  **"Subclass D:** All class members who were required by Defendants to stay on Defendants' premises for rest breaks."

    e.  **"Subclass E:** All class members who were subject to Defendants' practice of rounding time recorded for purposes of calculating compensation for time worked or for calculating meal periods."

    f.  **"Subclass F:** All class members who were subject to Defendants' practice of untimely payment of their final wages."

    g.  **"Subclass G:** All class members who were subject to Defendants' practice of providing non compliant wage statements."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

h.   "**Subclass H:** All class members who were subject to Defendants' practice of providing inaccurate paid sick leave."

i.   "**Subclass I:** All class members who were subject to Defendants' failure to keep requisite payroll records." *Id*.

19.   Plaintiff also seeks civil penalties on behalf of himself and other current or former employees of APFM for alleged violations of certain provisions of the California Labor Code, as allowed by The California Labor Code Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq.* Compl., ¶¶ 58; RJN, Ex. A.

## The Purported Class Contains At Least 100 Members

20.   In the Complaint, Plaintiff alleges that "[t]he class members are so numerous that joinder of all class members is impracticable. The membership of the entire class is unknown to Plaintiff at this time; however, the class is estimated to be greater than one (1) individuals and the identity of such membership is readily ascertainable by inspection of Defendants' employment records." Compl., ¶ 56a.

21.   Based on a review of its business records, Defendant has determined that the aggregate number of hourly-paid or non-exempt employees of APFM within the State of California employed between May 23, 2020 and June 27, 2024 is at least 126. McConnell Decl., ¶ 6.  Therefore, there are well over 100 putative class members.

## There Is Diversity of Citizenship Between

## At Least One Proposed Class Member and One Defendant

22.   CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C §§ 1332(d)(2)(A); 1453(b).  Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states, since Plaintiff is a citizen of California, while Defendant is a citizen of New York and Delaware.  Compl., ¶ 6;  Iannotti Decl., ¶ 4.

23.   **Plaintiff's Citizenship.**  For diversity purposes, a person is a "citizen" of the state in which they are domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d

1088 (9th Cir. 1983). A person's domicile is the place he or she resides with the intent to remain, or to which he or she intends to return. *See Kanter v. Warner-Lambert Clew & Moss*, 797 F.2d 747, 749–50 (9th Cir. 1986).

24.     According to the Complaint, at the time this action was commenced and at the time of removal, Plaintiff resided in California. Compl., ¶ 6. Plaintiff's allegations, accordingly, establish that he is a citizen of the State of California. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519–20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, No. 1:05-CV-01187-022-GS, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (alleged place of residence provides "prima facie" proof of domicile).

25.     In his Complaint, Plaintiff also alleges that Defendant employed him in the County of Alameda, California. Compl., ¶¶ 5, 13–14. Further, the mailing address that Plaintiff provided to APFM for purposes of payroll reflected that he was living in Union City, California during his employment. McConnell Decl., ¶ 5. Moreover, Plaintiff's I-9 Form completed prior to commencing his employment with APFM included a copy of his California Driver License, which is further evidence of his citizenship. *Id.*; *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 11–12 (1st Cir. 1991) (manifestations of domiciliary intent include length of residence, place of employment, possession of a state's driver's license, representation on corporate reports); *Altimore v. Mt. Mercy College*, 420 F.3d 763, 768–69 (8th Cir. 2005) (once an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship). Accordingly, Plaintiff is a citizen of the State of California for purposes of removal.

DEFENDANT A PLACE FOR MOM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441 AND 1446

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

26. **Defendant's Citizenship[3].**  For purposes of determining citizenship under CAFA, the citizenship of a corporation is "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  "Principal place of business means the corporate headquarters where a corporation's high level officers direct, control, and coordinate its activities on a day-to-day basis, also known as the corporation's 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2000).  A corporation's nerve center is a "single place" and "should normally be the place where the corporation maintains its headquarters." *Id.* at 93.  Relevant factors include where executives reside and maintain offices, where administrative and financial offices are located, where the board of directors meets, and where day-to-day control over the company is executed. *See, e.g.*, *Tomblin v. XLNT Veterinary Care, Inc.*, Case No. 09-cv-1940 BTM (JMA), 2010 WL 2757311, at *9–10 (S.D. Cal. July 12, 2010).

27. Defendant is now, and was at the time this action was commenced, a citizen of the states of New York and Delaware within the meaning of 28 U.S.C. § 1332. Iannotti Decl., ¶ 4.  Defendant is a corporation organized and existing under the laws of the state of Delaware with its headquarters and principal place of business located in New York. *Id*.  In *Hertz Corp. v. Friend*, the United States Supreme Court held that the "nerve center" test is used to determine a corporation's "principal place of business." 559 U.S. 77, 93 (2010).  To this end, the Court reasoned that a corporation's "nerve center" is normally located where the corporation maintains its corporate headquarters and where the "corporation's officers direct, control, and coordinate the corporation's

---

[3] CAFA's "home state" exception does not apply to this case.  The home state exception requires: (1) two-thirds or more of the members of the proposed class in the aggregate to be citizens of the state in which the action is filed; and (2) all the "primary defendants" to be citizens of the state in which the action is filed. 28 U.S.C. § 1332(d)(4)(B); *Harrington v. Mattel, Inc.*, No. C07-05110 MJJ, 2007 WL 4556920, at *5 (N.D. Cal. Dec. 20, 2007).  Here, Defendant is not a citizen of California and thus the "home state" exception does not apply.  Similarly, CAFA's "local controversy" exception is not applicable because Defendant is not a citizen of California and, thus, all requirements per 28 U.S.C. § 1332(d)(4) cannot be met.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

activities." *Id*. at 92–93.  Here, Defendant's principal place of business is indisputably New York based upon the following factors[4]: (1) it is where the company's corporate headquarters is located; (2) it is where its officers direct, control, and coordinate of the company's business takes place; (3) it is where certain corporate-wide functions, such as legal, finance, accounting, marketing, and human resources are directed and coordinated; (4) it is where policy decisions are made; (5) it is where the day-to-day management of APFM's national business takes place; and (6) it is where the corporate and financial records are maintained.  Iannotti Decl., ¶ 4.

28.    **Doe Defendants.**  Plaintiff has also named as Defendants Does 1 through 50. Compl., ¶ 10.  For purposes of removal based on diversity, "the citizenship of Defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b); *see Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed Defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (same).  The existence of the alleged Doe Defendants thus does not impact this Court's removal jurisdiction.  *Albrego v. Dow Chemical Co.*, 443 F.3d 676, 679–80 (9th Cir. 2006) (rule applied to CAFA removal).

## The Alleged Amount In Controversy Exceeds $5,000,000

29.    Under CAFA, the articulated claims of all class members are aggregated to determine whether the amount in controversy exceeds $5,000,000.  28 U.S.C. § 1332(d)(6).  Significantly, Congress intended federal jurisdiction to exist under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief."  Staff of S. Comm. On the Judiciary, 109th Cong., Rep. on The Class Action Fairness Act of 2005, 42 (Comm. Print 2005).  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

---

[4] These factors have previously been considered by courts in determining a corporation's "nerve center." *See, e.g., Inger v. Del E. Webb Corp*., 233 F. Supp. 713, 716 (N.D. Cal. 1964); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989).

in state or federal court should be resolved in favor of federal jurisdiction.  *Id.* at 43. ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

30.    When determining the amount that a plaintiff has placed in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint."  *Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) (internal citations omitted).  A court considers the allegations of the Complaint, the contents of the removal petition and evidence, such as declarations, in order to determine whether the jurisdictional amount in controversy is met.  *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018).  Accordingly, APFM may establish the amount in controversy by referencing Plaintiff's allegations and/or by setting forth facts in the notice of removal that demonstrate that the amount in controversy is more likely than not to exceed the jurisdictional minimum.  Indeed, the ultimate inquiry is the amount put "in controversy" by the Plaintiff's complaint, not what a defendant will actually owe following a trial, if any.  *Rippee v. Bostom Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *Islas v. Ford Motor Co.*, CV 22-4623-GW-JCx, 2022 U.S. Dist. LEXIS 219355, at *5–6 (C.D. Cal. Sept. 23, 2022) (holding same).

31.    APFM denies Plaintiff's allegations of misconduct and intends to defend itself vigorously against Plaintiff's causes of action.  Nevertheless, and without admitting that Plaintiff and/or any member of the putative class can recover any damages, when one considers the number of alleged putative class members, the number of alleged violations of California law, the statute of limitations period embraced by the claims, and the class definition alleged in the State Court Action, the aggregate amount in controversy presented by the case exceeds $5,000,000 for purposes

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

of removal based on the following:

32.    For purposes of determining the aggregate amount in controversy[5] for this motion, the putative class includes 126 putative class members who were employed by APFM during the Class Period up through June 27, 2024.  McConnell Decl., ¶ 6.  The putative class members were employed during approximately 7,356 workweeks between May 23, 2020 through June 27, 2024.  *Id*. at ¶ 6.    In addition, there were approximately 99 putative class members whose employment ended between May 23, 2021 and June 27, 2024.  *Id.* at ¶ 9.

33.    **Unpaid Minimum Wages Claim.**  In the Complaint, Plaintiff alleges that he and the other class members "were not receiving at least minimum wages for all hours worked."  Compl., ¶ 23.  Plaintiff further alleges that "Defendants rounded the work time recorded by Plaintiff and the other class members in a manner that was not fair and neutral on its face and/or that favored Defendants over time, resulting in Plaintiff and the other class members being underpaid for their time worked."  Compl., ¶ 25.  Further, in his PAGA Letter, Plaintiff alleged that "A Place for Mom utilized rounding practices that resulted in the systematic underpayment of wages (including minimum wages, straight time wages and overtime wages) to Hector Pineda and aggrieved employees."  RJN, Ex. A, at p. 6.  Based on these allegations, Plaintiff contends that he and the putative class members are entitled to "the unpaid balance of their minimum wage compensation as well as interest, costs, and attorney's fees, and liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."  Compl., ¶ 64.  Plaintiff further alleges that he and the putative class members are entitled to "recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages."  Compl., ¶ 65.

---

[5] The Supreme Court has held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee Basin Operating Co. v. Owens*, 572 U.S. 81, 89 (2014).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

34.    Under California Labor Code sections 1194.2 and 1197.1, an employer who fails to pay the  minimum wage owes the employee: (1)  the unpaid minimum wage; (2) liquidated damages in the  same amount as the unpaid wage; and (3) a penalty of $100 to each underpaid employee per pay period for an initial minimum wage violation and a penalty of $250 for each subsequent violation.[6]  Under California law, penalty claims under Section 1197.1 are subject to a one year statute of limitations. Code of Civ. Proc. § 340.

35.    There are at least 50 Putative Class Members who worked approximately 777 pay periods for APFM between May 23, 2023 and June 27, 2024.  McConnell Decl., ¶ 11.

36.    For each of the initial pay periods in which these 50 putative class members were allegedly not paid all minimum wages owed, they would each be entitled to $100 in penalties in accordance with the allegations in Plaintiff's Complaint, for a total of $5,000.00 (50 initial pay periods x $100).  Compl., ¶ 65.  For the remaining 727 pay periods worked during this penalty period, each putative class member would be entitled to $250 in penalties in accordance with the allegations in Plaintiff's Complaint for a total of $181,750.00 (727 subsequent pay periods x $250) for a total of **$186,750.00** ($176,750.00 + $5,000.00).

37.    **Unpaid Overtime Wages Claim.**  In the Complaint, Plaintiff alleges that "[d]uring the relevant time period, Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week. unpaid overtime wages."  Compl., ¶ 72.  Plaintiff alleges that Defendant "intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members." Compl., ¶ 73.  Furthermore, Plaintiff alleges that "Defendants engaged in a uniform policy and systematic scheme of wage abuse against their hourly-paid or non-exempt

---

[6] APFM denies that Plaintiff and/or the putative class members can recover penalties under Labor Code Section 1197.1.  Solely for purposes of removal, however, since Plaintiff alleges that he and the other class members can recover $100.00 for each initial failure and $250.00 for each subsequent failure to pay minimum wages, APFM includes these penalties as part of the amount in controversy. *See* Compl., ¶ 65.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

employees within the State of California.  This scheme involved, *inter alia*, failing to pay them for all regular and overtime hours worked, failing to pay them at the applicable regular rate of pay, failing to pay them for missed meal periods, and failing to pay them for missed rest breaks in violation of California law."  Compl., ¶ 21.

38.  Plaintiff also alleges that Defendant required him and the putative class members "to respond to work-related requests **at all times**, including during meal periods."  RJN, Ex. A, at p. 7 (emphasis added).  Thus, effectively alleging that all meal periods were on-call and should have been paid.  Plaintiff further alleges that Defendant did not pay him and the putative class members the accurate overtime rate compensation owed to them because Defendant "failed to use the shift differential pay/commissions/non-discretionary bonuses/non-discretionary performance pay to calculate the regular rate of pay used to calculate the overtime rate."[7]  Compl., ¶ 26. Alleging a "pattern and practice" can reasonably be interpreted to mean that each class member suffered the alleged harm.  *Danielsson v. Blood Ctrs. of the Pac.*, No. 19-cv-04592-JCS, 2019 U.S. Dist. LEXIS 222539, at *2 (N.D. Cal. Dec. 30, 2019).  APFM denies all liability related to Plaintiff's unpaid overtime claim and contends that it lacks merit.

39.  **Total Potential Unpaid Wages.**  APFM denies the validity and merit of Plaintiff's claims for unpaid wages.  Solely for purposes of removal, however, based on Plaintiff's illegal rounding allegations that he contends were "systematic", APFM conservatively estimates that Plaintiff and the putative class members he seeks to represent are alleging that they were not properly paid for 15 minutes of work each day, for a total of 1.25 hours per week per class member due to the rounding allegations.  *See*

---

[7] As explained in detail below, the addition of bonus payments to the regular rate of pay would result in a conservative premium rate of $2.23 to be added to each overtime hour worked.  Here, that would result in an additional **$61,514.55** in potential overtime liability ($2.23/hour x 3.75 hours/week x 7,356 workweeks in the class period).  Plaintiff may also allege that the bonuses paid were flat sum bonuses. If that is alleged, then the amount in controversy is significantly higher given that the divisor would only be straight time hours worked and the multiplier for overtime wages would be 1.5, rather than .5. This would result in a potential liability figure of more than **$184,957.43** ([($4.47*1.5) x 3.75 hours] x 7,356 workweeks).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Compl., ¶¶ 23, 25, 72; RJN, Ex. A, at p. 6.  Additionally, given that Plaintiff alleges that he and the putative class members were required to work through their meal periods and respond to work-related requests at all times during their meal periods and not compensated for that time, a reasonable estimate of unpaid overtime wages would be 2.5 hours per week per class member, based on each class member working through (or being on-call during) his/her 30-minute meal period each workday.  *See* Compl., ¶¶ 82–83; RJN, Ex. A, at pp. 7–8.  This would yield a conservative estimate of 3.75 hours per week of alleged unpaid overtime wages when factoring in Plaintiff's allegation that he and the other class members worked in excess of 8 hours per day and in excess of 40 hours per week.  Compl., ¶ 72.

40.    As set forth above, there were approximately 7,356 workweeks between May 23, 2020 and June 27, 2024 attributable to the putative class members.  McConnell Decl., ¶ 6.  Applying the average hourly rate of employees hired within each year within the relevant time period to the number of workweeks in each year, yields approximately **$901,967.17** in unpaid overtime wages.[8]

41.    Based on the above calculation and Plaintiff's allegations that these monies are recoverable, the alleged amount in controversy with respect to Plaintiff's unpaid minimum wage and overtime claim is approximately **$1,088,717.17** based on: (1)

---

[8] Based on Plaintiff's allegations, for 2020, there were approximately 3,701.78 unpaid overtime hours (987.14 workweeks in 2020 x 3.75 OT hours per week), and the average straight time and overtime rate for employees terminated in 2020 respectively were $15.97/hour and $23.96/hour, excluding regular rate additions, which results in a conservative estimate of approximately **$88,694.53** in unpaid overtime wages.  For 2021, there were approximately 7,247.14 unpaid overtime hours (1,932.57 workweeks x 3.75 OT hours per week), and the average straight time rate and overtime rate for putative class members terminated in 2021 respectively were $20.67/hour and $31.01/hour, which results in a conservative estimate of **$224,733.74** in unpaid overtime wages.  For 2022, there were approximately 7,604.48 unpaid overtime hours (2,027.86 workweeks x 3.75 OT hours per week), and the average straight time rate and overtime rate for putative class members terminated in 2022 respectively were $22.54/hour and $33.81/hour, which results in a conservative estimate of approximately **$257,107.30** in unpaid overtime wages.  For 2023, there were approximately 7,310.37 unpaid overtime hours (1,949.43 workweeks x 3.75 OT hours per week), and the average straight time rate and overtime rate of putative class members terminated in 2023 respectively were $24.26/hour and $36.39/hour, which results in a conservative estimate of approximately **$266,024.10** in unpaid overtime wages.  For 2024, there were approximately 1,721.25 unpaid overtime hours (459 workweeks x 3.75 OT hours per week), and the average straight time rate and overtime rate of putative class members terminated in 2024 respectively were $25.33/hour and $38.00/hour, which results in a conservative estimate of approximately **$65,407.50** in unpaid overtime wages.  *See* McConnell Decl., ¶ 6.

$901,967.17 in unpaid overtime; and (2) $186,750.00 in penalties under Labor Code Section 1197.1.

42.    **Meal and Rest Period Claims.**  Plaintiff alleges that "[d]uring the relevant time period, Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." Compl., ¶ 83.  As to rest periods, Plaintiff alleges that "[d]uring the relevant time period, Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods."  Compl., ¶ 92.  Plaintiff further alleges that APFM "required Plaintiff and the other class members to remain on Defendants' premises during purported rest periods, thereby failing to relieve them of all employer control." Compl., ¶ 30.  Moreover, in his PAGA Letter, Plaintiff alleges that APFM's "policy and culture prevented Hector Pineda and the aggrieved employees from taking timely, uninterrupted, and duty free meal periods because of the priority placed on maximizing profits over employees' right to receive timely, uninterrupted, and duty-free meal periods."  RJN, Exh. A, at p. 8.  APFM denies Plaintiff's allegations and contends that his meal period claim and rest period claim both lack merit.

43.    Subdivision (b) of California Labor Code section 226.7 states, "[i]f an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  This one hour pay for meal period and/or rest period non-compliance is subject to a three-year statute of limitations. *Murphy v. Kenneth Cole Prods., Inc.,* 40 Cal. 4th 1094, 1102–14 (2007); Cal. Civ. Proc. Code § 338(a).  An employee may recover one meal and one rest period premium each shift, for a maximum of two premium payments per workday.  *United Parcel Serv. Wage & Hour Cases,* 196 Cal. App. 4th 57, 69–70 (2011).

44.     As stated above, Plaintiff also asserts a cause of action for violation of California Business & Professions Code section 17200 *et seq.* Compl., ¶¶ 125, 131.  A four-year statute of limitations applies to meal and rest period claims under that law. *See* Cal. Bus. & Prof. Code § 17208; *Murphy*, 40 Cal. 4th at 1114.  Thus, Plaintiff can recover alleged meal and rest period premiums for up to four years prior to the date of filing suit.  *See Howell v. Leprino Foods Co.*, No. 1:18-cv-01404-AWI-BAM, 2021 U.S. Dist. LEXIS 9914, at *6 (E.D. Cal. Jan. 19, 2021) (explaining that a California Business & Professions Code section 17200 *et seq.* claim may be based on California Labor Code section 226.7 violations).

45.     Because Plaintiff alleges that Defendant required him and the putative class members to stay on premises for rest periods, thus, not providing any rest periods, and required them to be on-call during meal periods, thus, not providing any meal periods, APFM applies without conceding and for purposes of this removal a 100% violation rate for these claims.  *See Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 106–07 (2022) (holding an employee is entitled to premium pay when he or she is required to work through their meal break or rest break and/or remain on duty during said break).  Applying the corresponding average pay rates in effect for terminated employees between May 23, 2020 and June 11, 2024 to the 7,356 workweeks at issue results in approximately **$1,603,384.55** in potential liability for Plaintiff's meal and rest period claims.[9]

46.     Plaintiff further alleges that the regular rate of pay was not paid when he and putative class members received commissions.  Compl., ¶ 26.  Defendant pays

---

[9] For 2020, the average straight time rate for employees terminated in that year was $15.97/hour x 5 workdays based on Plaintiff's allegations Plaintiff and the putative class members were denied their meal periods and rest periods at least five (5) days per week x 987.14 workweeks in 2020 x 2 = **$157,646.26** in unpaid premium wages.  For 2021: the average straight time rate of an employee terminated was $20.67/hour x 5 workdays x 1,932.57 workweeks x 2 = **$399,462.22** in unpaid premium wages.  For 2022: the average straight time rate of an employee terminated was $22.54/hour x 5 workdays x 2,027.86 workweeks x 2 = **$457,079.65** in unpaid premium wages.  For 2023: the average straight time rate of an employee terminated was $24.26/hour x 5 workdays x 1,949.43 workweeks x 2 = **$472,931.72** in unpaid premium wages.  For 2024, the average straight time rate of an employee terminated was $25.33/hour x 5 workdays x 459 workweeks x 2 yields approximately **$116,264.70** in unpaid premium wages.  McConnell Decl., ¶ 6.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff and other putative class member variable bonus pay based on their achievement against set sales quota targets. McConnell Decl., ¶ 7. During his employment with Defendant, Plaintiff received such variable bonus payments during 60% of the pay periods that he worked.[10] *Id.*, ¶ 8. Plaintiff's received monthly bonus payments of $247.92, $408.33 and $1,779.17, meaning his average bonus amount was approximately $811. *Id.* Assuming that putative class members worked an average of 41.25 hours per week (as explained above), the regular rate of pay on this low average bonus payment that Plaintiff alleges is in controversy on the straight time portion would be $4.47 (($800.00 / (41.25 hours per week x 4.34 weeks per month)) and the half time premium for overtime would be $2.23 ($4.47 x .5).[11]

47.    As noted above, there were a total of 7,356 workweeks eligible for meal and rest period premiums. Applying the 60% to those workweeks results in a total workweeks of 4,413.6 (7,356 * .6) that would need a true up for bonus payments. Applying 5 meal period premiums and 5 rest period premiums to those 4,413.6 workweeks results in 44,136 (4,413.6 x 10) total meal and rest period premiums to which the additional amount needs to be applied. Applying an additional $4.47 to those meal/rest period premiums results in an additional amount in controversy of **$197,287.92**, for a total of **$1,800,672.47** in potential liability under these claims.

48.    **Waiting Time Penalties Claim.** Plaintiff seeks penalties under California Labor Code section 203. As set forth in the Complaint, Plaintiffs allege that "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." Compl., ¶ 99. As such, Plaintiffs allege that "Defendants are liable to Plaintiff and

---

[10] This is likely lower than other putative class members because Plaintiff was ramping up from hire during a large portion of his employment and would not receive variable bonus payments during the ramp up period.

[11] As noted above, if Plaintiff's are alleging that this was a flat sum bonus, the amounts are actually greater because the divisor is only straight time hours and not all hours worked as used above. Moreover, we utilized a $800 bonus figure instead of $811 to make the estimate even more conservative in nature.

proposed Class Members for all penalties owing pursuant to Cal. Lab. Code §§ 201-203." *Id.*, ¶ 100.  Plaintiff further alleges that "Cal. Lab. Code § 203 provides that an employee's wages will continue as a penalty up to thirty days from the time the wages were due. Therefore, Plaintiff and Class Members are entitled to penalties pursuant to Cal. Lab. Code § 203, plus interest." *Id.*, ¶ 101.  The statute of limitations for waiting time penalties under Labor Code § 203 is three years.  *See Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010).  Defendant denies the validity and merit of Plaintiff's waiting time penalties claim.

49.    There were approximately 99 putative class members whose employment ended between May 23, 2021 and June 27, 2024.  McConnell Decl., ¶ 10.  Based on the allegations in the Complaint, these 99 putative class members seek payment of 30 days of waiting time penalties and pre-judgment interest.  Compl., ¶ 101; Prayer for Relief ¶¶ 30–34.  As noted above, based on the allegations in Plaintiff's Complaint, it is a conservative estimate to assume that Plaintiff and the putative class members he seeks to represent were improperly denied 0.25 hours of unpaid wages and had to work through all of their meal periods, making their actual workdays alleged to be 8.75 hours, 0.75 hours of which is being paid at their overtime rates.  Compl., ¶¶ 25, 82–83. Moreover, as explained above, Plaintiff and the putative class members allege having to work through their lunch breaks and rest periods, which are wages for purposes of calculating waiting time penalties.  *See Frausto v. Bank of Am., N.A.*, Case No. 18-cv-01983-MEJ, 2018 U.S. Dist. LEXIS 130220, at *20 (N.D. Cal. Aug. 2, 2018) ("This Court agrees with the majority of courts that meal and rest premiums are wages for the purposes of waiting time penalties.").  This  brings their total amount of hours worked each day to be estimated at 8.75 hours/day, 0.75 of which should be paid at their overtime rates, plus the 2 hours for missed meal/rest periods paid at their regular rates of pay.  Based upon the applicable final hourly rates for each of the respective employees, Plaintiff's waiting time penalty claim for thirty days' pay for each terminated putative class member equates to approximately **$769,053.45** in potential

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

liability.[12]

50.    As noted above, Plaintiff further alleges that the regular rate of pay was not paid when he and putative class members received commissions.  Compl., ¶ 26. Using conservative estimates, we previously calculated a low average bonus payment that Plaintiff alleges is in controversy on the straight time portion would be $4.47 (($800.00 / (41.25 hours per week x 4.34 weeks per month)) and the half time premium for overtime would be $2.23 ($4.47 x .5).  Thus, for the 2 hours for missed meal/rest periods, those hours should also factor in a regular rate of pay figure of $4.47 for each of those hours, and for the 0.75 hours of unpaid overtime, the half time premium should also be considered.  This would increase the amount in controversy by approximately **$18,911.48** (60% of $31,519.13 [$26,551.80 ($4.47 x 2 missed premium payments x 99 class members x 30 days) + $4,967.33 ($2.23 x 0.75 x 99 class members x 30 days)]) for a combined total of **$787,964.93** in potential liability.

51.    **Reimbursement of Necessary Business Expenses.**  Plaintiff alleges that "[d]uring the relevant time period, Defendants failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs."  Compl., ¶ 49. Plaintiff further alleges that this alleged failure to reimburse was in violation of California Code sections 2800 and 2802 and that it was Defendant's "policy and practice."  Compl., ¶ 149.  Plaintiff does not specify the nature, amount, or frequency of the alleged expenses.  California law currently applies a four-year statute of

---

[12] At the time of their respective terminations, one employee earned $15/hour with an overtime rate of $22.25/hour excluding regular rate calculations, two employees earned $15.63/hour with an overtime rate of $23.45/hour, two employees earned $18.03/hour with an overtime rate of $27.05/hour, one employee earned $19.24/hour with an overtime rate of $28.86/hour, three employees earned $21.63/hour with an overtime rate of $32.45/hour, thirteen employees earned $21.64/hour with an overtime rate of $32.46/hour, thirteen employees earned $22.00/hour with an overtime rate of $33.00/hour, three employees earned $22.84/hour with an overtime rate of $34.26/hour, ten employees earned $24.04/hour with an overtime rate of $36.06/hour, nine employees earned $24.05/hour with an overtime rate of $36.08/hour, seventeen employees earned $24.76/hour with an overtime rate of $37.14/hour, eighteen employees earned $24.77/hour with an overtime rate of $37.16/hour, two employees earned $24.78/hour with an overtime rate of $37.17/hour, one employee earned $25.24/hour with an overtime rate of $37.86/hour, one employee earned $25.25/hour with an overtime rate of $37.88/hour, two employees earned $26.01/hour with an overtime rate of $39.02/hour, and one employee earned $26.29/hour with an overtime rate of $39.44/hour.  McConnell Decl., ¶ 9.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

limitations to unfair competition claims based on alleged failures to indemnify business expenses. *See* Cal. Bus. & Prof. Code § 17208. Defendant denies the validity and merit of Plaintiff's failure to reimburse necessary business expenses claim.

52.    For purposes of this removal, APFM assumes without conceding that Plaintiff's reimbursement allegations relate to cell phone and internet expenses in connection with his and the putative class members' discharge of their job duties.

53.    From May 23, 2020 through June 27, 2024, the putative class members have worked approximately 7,356 workweeks. McConnell Decl., ¶ 6. Assuming $15 per workweek in alleged work-related cell phone and other business expenses, results in a total of **$110,340.00** ($15 x 7,356 workweeks).

54.    **Itemized Wage Statements.**    Plaintiffs also seek recovery based on Defendant's alleged failure to provide accurate itemized wage statements. Compl., ¶¶ 108–114. The Labor Code provides for recovery of "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000)." Cal. Lab. Code § 226(e). A one-year statute of limitations applies to the recovery of statutory penalties for violations of Labor Code section 226(a). *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1169 (E.D. Cal. 2012); Cal. Code Civ. Proc. § 340. District courts frequently hold that the "subsequent" pay period violation of $100 is only triggered once the employer is notified that their wage statement practices are in violation of California Labor Code section 226. *See, e.g.*, *Robinson v. Open Top Sightseeing San Francisco, LLC*, Case No. 14-cv-00852-PJH, 2018 U.S. Dist. LEXIS 24556, at *57–58 (N.D. Cal. Feb. 14, 2018) (citing *Amaral v. Cintas Corp. No. 2.*, 163 Cal. App. 4th 1157, 1209 (2008)).

55.    As set forth in the Complaint, Plaintiff alleges that Defendant intentionally and willfully failed to provide Plaintiffs and the putative class members with accurate itemized wage statements, as required by Cal. Lab. Code § 226. Compl., ¶ 110–113.

Plaintiff alleges that he "and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee." Compl., ¶ 113. Defendant denies Plaintiff's allegations and contends Plaintiff's claim has no merit.

56.    **Total Potential Liability for Wage Statement Claim.** Between May 23, 2023 and June 27, 2024, at least 50 putative class members received wage statements every two weeks. McConnell Decl., ¶ 10. The composition of employees and the range of pay periods is as follows:

a.    14 putative class members had 29 pay periods, and they would receive penalties conservatively estimated at $2,850.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 28 pay periods)];[13]

b.    1 putative class member had 28 pay periods, and they would receive penalties conservatively estimated at $2,750.00 [$50 initial violation rate + ($100 subsequent violation rate x 27 pay periods)];

c.    1 putative class member had 27 pay periods, and they would receive penalties conservatively estimated at $2,650.00 [$50 initial violation rate + ($100 subsequent violation rate x 26 pay periods)];

d.    1 putative class member had 25 pay periods, and they would receive penalties conservatively estimated at $2,450.00 [$50 initial violation rate + ($100 subsequent violation rate x 24 pay periods)];

---

[13] APFM does not concede Plaintiffs and the Putative class members are entitled to recovery under Section 226 and does not agree that the initial and subsequent violation rates apply. Rather, APFM believes that if Plaintiff were permitted to recover under Section 226, his recovery must be limited to the "initial violation" amount of $50.00 per pay period pursuant to Section 226(e). *See, e.g.*, *Amaral*, 163 Cal. App. 4th at 1209. Plaintiff, however, appears to contend that the subsequent violation rate of $100 per pay period applies after the first pay period where there is a violation. Thus, for purposes of removal only, APFM is justified in using the initial/subsequent violation rates and a 100% violation rate in computing the amount in controversy on Plaintiff's wage statement claim based on the allegations in the Complaint. *See Ritenour v. Carrington Mortg. Servs. LLC*, Case No. SACV 16-02011-CJC(DFMx), 2017 U.S. Dist. LEXIS 1747, at *9 (C.D. Cal. Jan. 5, 2017 (regarding wage statement claims, "[g]iven the vague language and the broad definition of the class, it is reasonable to assume a 100% violation rate").

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

e.  1 putative class member had 24 pay periods, and they would receive penalties conservatively estimated at $2,300.00 [$50 initial violation rate + ($100 subsequent violation rate x 23 pay periods)];

f.  1 putative class member had 22 pay periods, and they would receive penalties conservatively estimated at $2,150.00 [$50 initial violation rate + ($100 subsequent violation rate x 21 pay periods)];

g.  1 putative class member had 20 pay periods, and they would receive penalties conservatively estimated at $1,950.00 [$50 initial violation rate + ($100 subsequent violation rate x 19 pay periods)];

h.  1 putative class member had 19 pay periods, and they would receive penalties conservatively estimated at $1,850.00 [$50 initial violation rate + ($100 subsequent violation rate x 18 pay periods)];

i.  1 putative class member had 16 pay periods, and they would receive penalties conservatively estimated at $1,550.00 [$50 initial violation rate + ($100 subsequent violation rate x 15 pay periods)];

j.  1 putative class member had 14 pay periods, and they would receive penalties conservatively estimated at $1,350.00 [$50 initial violation rate + ($100 subsequent violation rate x 13 pay periods)];

k.  1 putative class member had 13 pay periods, and they would receive penalties conservatively estimated at $1,250.00 [$50 initial violation rate + ($100 subsequent violation rate x 12 pay periods)];

l.  2 putative class members had 12 pay periods, and they would receive penalties conservatively estimated at $1,150.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 11 pay periods)];

m. 3 putative class members had 11 pay periods, and they would receive penalties conservatively estimated at $1,050.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 10 pay periods)];

n.  2 putative class members had 10 pay periods, and they would receive penalties conservatively estimated at $950.00 [$50 initial violation rate + ($100 subsequent violation rate x 9 pay periods)];

o.  4 putative class members had 8 pay periods, and they would receive penalties conservatively estimated at $750.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 7 pay periods)];

p.  2 putative class members had 7 pay periods, and they would receive penalties conservatively estimated at $650.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 6 pay periods)];

q.  3 putative class members had 6 pay periods, and they would receive penalties conservatively estimated at $550.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 5 pay periods)];

r.  1 putative class member had 5 pay periods, and they would receive penalties conservatively estimated at $450.00 [$50 initial violation rate + ($100 subsequent violation rate x 4 pay periods)];

s.  1 putative class member had 4 pay periods, and they would receive penalties conservatively estimated at $350.00 [$50 initial violation rate + ($100 subsequent violation rate x 3 pay periods)];

t.  2 putative class members had 3 pay periods, and they would receive penalties conservatively estimated at $250.00 per individual [$50 initial violation rate + ($100 subsequent violation rate x 2 pay periods)];

u.  1 putative class member had 2 pay periods, and they would receive penalties conservatively estimated at $150.00 [$50 initial violation rate + ($100 subsequent violation rate x 1 pay period)]; and

v.  5 putative class members had 1 pay period, and they would receive penalties conservatively estimated at $50.00 per individual [$50 initial violation rate].  McConnell Decl., ¶ 10.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Based thereon, although Defendant denies that Plaintiff or any putative class member is entitled to penalties, the class allegations seeking penalties under California Labor Code Section 226 yields an estimated aggregated penalties of **$75,200.00** [($2,850.00 x 14) + ($2,750.00 x 1) + ($2,650.00 x 1) + ($2,450.00 x 1) + ($2,350.00 x 1) + ($2,150.00 x 1) + ($1,950.00 x 1) + ($1,850.00 x 1) + ($1,550.00 x 1) + ($1,350.00 x 1) + ($1,250.00 x 1) + ($1,150.00 x 2) + ($1,050.00 x 3) + ($950.00 x 2) + ($750.00 x 4) + ($650.00 x 2) + ($550.00 x 3) + ($450.00 x 1) + ($350.00 x 1) + ($250.00 x 2) + ($150.00 x 1) + ($50.00 x 5)] in controversy.

**57.    Failure To Timely Pay Wages During Employment.**  In his Complaint, Plaintiff alleges that "[d]uring the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204."  Compl., ¶ 106.  Plaintiff further alleges that he "and the other class members are entitled to recover all remedies for violations of California Labor Code section 204."  *Id.*, ¶ 107.

58.    California Labor Code § 210 provides a $100 per initial violation for failure to pay an employee all wages owed to each employee under Labor Code Section 204, and for each subsequent violation, $200 for each failure to pay each employee, plus 25% of the amount unlawfully withheld.  *See* Cal. Lab. Code § 210(a).  A one-year statute of limitation applies to a claim for penalties in California.  *See Murphy*, 40 Cal. 4th at 1102.

59.    Between May 23, 2023 and June 27, 2024, at least 50 putative class members received wage statements every two weeks.  McConnell Decl., ¶ 10.  The composition of employees and the range of pay periods is as follows:

   a.  14 putative class members had 29 pay periods, and they would receive penalties conservatively estimated at $5,700.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 28 pay periods)];

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

b.  1 putative class member had 28 pay periods, and they would receive penalties conservatively estimated at $5,500.00 [$100 initial violation rate + ($200 subsequent violation rate x 27 pay periods)];

c.  1 putative class member had 27 pay periods, and they would receive penalties conservatively estimated at $5,300.00 [$100 initial violation rate + ($200 subsequent violation rate x 26 pay periods)];

d.  1 putative class member had 25 pay periods, and they would receive penalties conservatively estimated at $4,900.00 [$100 initial violation rate + ($200 subsequent violation rate x 24 pay periods)];

e.  1 putative class member had 24 pay periods, and they would receive penalties conservatively estimated at $4,700.00 [$100 initial violation rate + ($200 subsequent violation rate x 23 pay periods)];

f.  1 putative class member had 22 pay periods, and they would receive penalties conservatively estimated at $4,300.00 [$100 initial violation rate + ($200 subsequent violation rate x 21 pay periods)];

g.  1 putative class member had 20 pay periods, and they would receive penalties conservatively estimated at $3,900.00 [$100 initial violation rate + ($200 subsequent violation rate x 19 pay periods)];

h.  1 putative class member had 19 pay periods, and they would receive penalties conservatively estimated at $3,700.00 [$100 initial violation rate + ($200 subsequent violation rate x 18 pay periods)];

i.  1 putative class member had 16 pay periods, and they would receive penalties conservatively estimated at $3,100.00 [$100 initial violation rate + ($200 subsequent violation rate x 15 pay periods)];

j.  1 putative class member had 14 pay periods, and they would receive penalties conservatively estimated at $2,700.00 [$100 initial violation rate + ($200 subsequent violation rate x 13 pay periods)];

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT A PLACE FOR MOM, INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT
PURSUANT TO 28 U.S.C. §§ 1332, 1367, 1441 AND 1446

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

k.  1 putative class member had 13 pay periods, and they would receive penalties conservatively estimated at $2,500.00 [$100 initial violation rate + ($200 subsequent violation rate x 12 pay periods)];

l.  2 putative class members had 12 pay periods, and they would receive penalties conservatively estimated at $2,300.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 11 pay periods)];

m.  3 putative class members had 11 pay periods, and they would receive penalties conservatively estimated at $2,100.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 10 pay periods)];

n.  2 putative class members had 10 pay periods, and they would receive penalties conservatively estimated at $1,900.00 [$100 initial violation rate + ($200 subsequent violation rate x 9 pay periods)];

o.  4 putative class members had 8 pay periods, and they would receive penalties conservatively estimated at $1,500.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 7 pay periods)];

p.  2 putative class members had 7 pay periods, and they would receive penalties conservatively estimated at $1,300.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 6 pay periods)];

q.  3 putative class members had 6 pay periods, and they would receive penalties conservatively estimated at $1,100.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 5 pay periods)];

r.  1 putative class member had 5 pay periods, and they would receive penalties conservatively estimated at $900.00 [$100 initial violation rate + ($200 subsequent violation rate x 4 pay periods)];

s.  1 putative class member had 4 pay periods, and they would receive penalties conservatively estimated at $700.00 [$100 initial violation rate + ($200 subsequent violation rate x 3 pay periods)];

t. 2 putative class members had 3 pay periods, and they would receive penalties conservatively estimated at $500.00 per individual [$100 initial violation rate + ($200 subsequent violation rate x 2 pay periods)];

u. 1 putative class member had 2 pay periods, and they would receive penalties conservatively estimated at $300.00 [$100 initial violation rate + ($200 subsequent violation rate x 1 pay period)]; and

v. 5 putative class members had 1 pay period, and they would receive penalties conservatively estimated at $100.00 per individual [$100 initial violation rate]. *See* McConnell Decl., ¶ 10.

Based thereon, although Defendant denies that Plaintiff or any putative class member is entitled to penalties, the class allegations seeking penalties under California Labor Code Section 210 yields an estimated aggregated penalties of **$150,400.00** [($5,700.00 x 14) + ($5,500.00 x 1) + ($5,300.00 x 1) + ($4,900.00 x 1) + ($4,700.00 x 1) + ($4,300.00 x 1) + ($3,900.00 x 1) + ($3,700.00 x 1) + ($3,100.00 x 1) + ($2,700.00 x 1) + ($2,500.00 x 1) + ($2,300.00 x 2) + ($2,100.00 x 3) + ($1,900.00 x 2) + ($1,500.00 x 4) + ($1,300.00 x 2) + ($1,100.00 x 3) + ($900.00 x 1) + ($700.00 x 1) + ($500.00 x 2) + ($300.00 x 1) + ($100.00 x 5)] in controversy.

60. Additionally, based on the calculations above, we previously made a conservative estimate that Plaintiff and the putative class members allege that they have been denied 1.25 hours of unpaid overtime wages per week, plus 10 hours of premium pay per week. The average straight time rate of the 50 putative class members during the relevant time period, was $24.70 per hour with an overtime rate, excluding regular rate of pay considerations, of $37.05/hour. McConnell Decl., ¶ 11. This would equate to approximately $293.31 of withheld wages per workweek [($24.70 x 10) + ($37.05 x 1.25)] and $586.62 per pay period ($293.31 x 2 weeks in a pay period), 25% of which would equate to approximately $146.66 per pay period.[14] Therefore, without admitting

---

[14] Plaintiff alleges that APFM "intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them, within any time period permissible under California Labor Code section 204." Compl., ¶ 106. While APFM denies this statement, solely for purposes of removal,

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

any liability, APFM conservatively estimates that there is an additional $113,954.82 [777 pay periods x $146.66 per pay period] in potentially withheld overtime wages under Labor Code Section 210(a), for a combined total of **$264,354.82** in potential liability under this claim.

61.    When also factoring in a conservative regular rate of pay estimate based on Plaintiff's earned bonus payments, the average straight time rate would increase by $4.47 and the half time premium for overtime would be $2.23.  This would equate to approximately $47.49 of withheld wages per workweek [($4.47 x 10) + ($2.23 x 1.25)] and $94.98 per pay period ($47.49 x 2 weeks in a pay period), 25% of which would equate to approximately $23.74 per pay period for the regular rate of pay differentials. Therefore, without admitting any liability, when factoring in the regular rate of pay considerations, APFM conservatively estimates that there is an additional **$11,067.59** (60% of $18,445.98 [777 pay periods x $23.74 per pay period]) in potentially withheld overtime wages under Labor Code Section 210(a), which when combined with the straight-time calculations above, results in a combined total of **$275,422.41** in potential liability under this claim.

62.    **Failure to Accurately Maintain Payroll Records.**  In his Complaint, Plaintiff alleges that "Defendants have intentionally and willfully failed to keep accurate and complete payroll records showing the hours worked daily and the wages paid, to Plaintiff and the other class members."  Compl., ¶ 122.  "As a result of Defendants' violation of California Labor Code section 1174(d), Plaintiff and the other class members have suffered injury and damage to their statutorily-protected rights." Compl., ¶ 123.  A penalty of $500 is assessed for failure to maintain accurate payroll records in accordance with Labor Code § 1174(d).  *See* Cal. Lab. Code § 1174.5.

Courts are undecided on whether a Section 1174.5 penalty can be assessed only once against an employer or for each employee.  *See Dell v. ServiceMaster Global*

APFM contends that the 25% penalty applies the entirety of Plaintiff's section 204 claim because he contends that APFM's actions were willful.  Cal. Lab. Code § 201(a)(2) (holding that 25% of wages withheld is assessed per employee for each Section 204 violation when it is willful or intentional).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Holdings, Inc.*, Case No.: C 15-3326 SBA, 2015 U.S. Dist. LEXIS 150585, at *10–11 n.6 (N.D. Cal. Nov. 5, 2015) (declining to reach issue of whether the penalty for failure to maintain payroll records can be imposed only once or is recoverable by each class member); *Williams v. ETC Inst.*, 2018 U.S. Dist. LEXIS 106015, at *24 n.5 (N.D. Cal. June 25, 2018) (noting that the plaintiffs provide no authority for their position that Labor Code Section 1174.5 penalties cannot be applied for multiple employees).  Based on the allegations of the Complaint, Plaintiff has alleged that APFM has engaged in illegal rounding practices and failed to pay Plaintiff and the putative class members for all hours worked, and thus it is reasonable to assume they contend that APFM has failed to maintain accurate payroll records for all of the putative class members.  Although APFM denies that Plaintiff and/or any putative class member is entitled to penalties under these Labor Code provisions, APFM estimates the potential scope of liability to be **$25,000.00** (50 employees within 1 year SOL period * $500) for failure to maintain payroll records.

63.    **Attorneys' Fees.** Plaintiff also seeks attorneys' fees and costs.  *See* Compl., Prayer for Relief ¶¶ 9, 15, 22, 47, 56, and 61.  Attorneys' fees awards can properly be included in calculating the amount in controversy, and such awards are commonly in the 25% to 33% range of an award to the class.  *See Galt G/S/ v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (holding that attorneys' fees may be included when calculating the amount in controversy).

64.    What is more, attorneys' fees are not limited to a pro-rata share of the settlement, but rather, determined by the number of hours worked at the time of judgment.  Plaintiff's counsel in this case are experienced wage and hour attorneys that have regularly achieved attorneys' fees awards in the seven-figure range, making the estimates here conservative in nature.  *See, e.g., Dove v. Apple-Metro, Inc., et al.*, Case No. 1:13-cv-01417, 2023 Jury Verdicts LEXIS 60361 (E.D.N.Y. May 22, 2023) (filing for approval of wage-and-hour collective action settlement for $3,000,000, of which $2,000,000 would be for attorneys' fees and costs); *Montes De Oca v. Bloomberg L.P.*,

Case No. 1:13-cv-00076-SN (S.D.N.Y. Mar. 11, 2014) (approving $5,400,000 settlement of a wage-and-hour class action lawsuit, of which $1,366,519.36 was allocated to attorneys' fees and costs).

65.    Here, the potential award is approximately $4,163,316.98, which at the conservative estimate of 25 percent results in attorneys' fees of approximately $1,040,829.24.  As noted above, however, Plaintiff's counsel has frequently obtained more in similar cases in fees.  Accordingly, APFM would conservatively estimate Plaintiff's potential recovery of attorneys' fees in this case if taken to judgment at $1,300,000.00.

**Total Aggregate Minimum Potential Liabilities and Additional Potential Recoveries Based on the Allegations in Plaintiff's Complaint[15]**

| AMOUNT IN CONTROVERSY | |
|---|---|
| **Basis for Claim** | **Amount** |
| Unpaid Minimum S& Overtime Wages | **$1,088,717.17** |
| Meal Periods and Rest Periods | **$1,800,672.47** |
| Waiting Time Penalties | **$787,964.93** |
| Business Expense Reimbursements | **$110,340.00** |
| Non-Compliant Wage Statements | **$75,200.00** |
| Failure to Timely Pay Wages During Employment | **$275,422.41** |
| Failure to Maintain Accurate Records | **$25,000.00** |
| Attorneys' Fees (25%) | **$1,300,000.00** |
| **TOTAL** | **$5,463,316.98** |

66.    **Other Damages.**    Though the jurisdictional minimum amount in controversy is met and easily surpassed by estimates of the afore-referenced claims,

---

[15] Again, APFM provides these calculations solely to establish that the amount in controversy exceeds the jurisdictional minimum.  APFM makes no admission of liability and denies Plaintiff's right to recover with respect to any aspect of this case.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Plaintiff's remaining claims bolster APFM's position that the amount in controversy exceeds $5,000,000. For instance, Plaintiff asserts a claim for alleged failure to provide him and the putative class members with sick leave at the correct rate of pay by failing to include all non-discretionary remuneration. Compl., ¶¶ 115–119. Defendant denies Plaintiff's allegations and contends that Plaintiff's claim for sick leave is without merit.

67.    California Labor Code section 246 requires an employer to provide employees with paid sick leave of not less than one hour per every 30 hours worked. As noted above, Plaintiff alleges that he and the other putative class members "were required to work more than eight (8) hours per day and/or forty (40) hours per week without overtime compensation." Compl., ¶ 39. While we do not include a calculation of potential liability under this claim within this removal, assuming Plaintiff's allegations are true, this would increase the amount in controversy even further beyond this jurisdictional threshold.

68.    In sum, through APFM's own investigation and calculations as set forth herein, a preponderance of the evidence supports removal of this matter because CAFA jurisdiction has been established, even based on conservative calculations. Therefore, removal of this matter is appropriate.

## STATEMENT OF SUPPLEMENTAL JURISDICTION

69.    As explained above, this Court has original jurisdiction over Plaintiff's class action claims under CAFA. APFM recognizes, however, that Plaintiff's remaining representative claim under PAGA is not removable under CAFA based on controlling Ninth Circuit law. *Baumann v. Chas Inv. Servs. Corp.*, 747 F.3d 1117 (9th Cir. 2014). To the extent any underlying Labor Code violations alleged in Plaintiff's Complaint are not removable under CAFA, such as Plaintiff's PAGA claim, such claims are removable under 28 U.S.C. § 1441(c) and, pursuant to this Court's supplemental jurisdiction, under 28 U.S.C. § 1367. That is because they share a common nucleus of operative fact with Plaintiff's other causes of action, namely, Plaintiff's alleged employment with APFM and its alleged failure to fully compensate Plaintiff. *See* 28

U.S.C. §§ 1367(a) and 1441(c). No California state law issue predominates, and this Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1441(c) is thus appropriate. Accordingly, this Court has jurisdiction over the entire Complaint and removal is proper.

70.     Under federal law, "district courts have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Moreover, supplemental jurisdiction is routinely exercised when the claims under which the court has original jurisdiction and "state claims have a 'common nucleus of operative fact' and would ordinarily be expected to [be tried] all in one judicial proceeding." *Osborn v. Haley*, 549 U.S. 225, 245 (2007).

71.     In this case, it is beyond dispute that Plaintiff's representative claim under PAGA is part of the same common nucleus of operative fact as his class claims, all of which emanate from his employment relationship with APFM and its alleged failure to pay Plaintiff, the putative class members, and/or the allegedly aggrieved employees all wages owed to them. *See generally* RJN, Ex. A [detailing Plaintiff's allegations under PAGA against his employer APFM]; Compl., ¶¶ 133–149 [Plaintiff's PAGA claim allegations predicated upon various Labor Code violations committed by APFM against Plaintiff and other APFM employees]. Moreover, California district courts routinely exercise supplemental jurisdiction over PAGA claims when the remaining causes of action are removable under CAFA. *See, e.g.*, *Thompson v. Target Corp.*, No. EDCV16-00839 JGB (MRWx), 2016 U.S. Dist. LEXIS 101363, at *41 (C.D. Cal. Aug. 2, 2016) ("[G]iven that the Court finds it has original jurisdiction over Plaintiff's class claims under CAFA, the Court may exercise supplemental jurisdiction over Plaintiff's PAGA claims."). Accordingly, supplemental jurisdiction over Plaintiff's PAGA claim is appropriate. *See Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1026–27 (9th Cir. 2019) (concluding a common nucleus of operative fact exists for purposes

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 33 –

of analyzing claim preclusion when the two claims are "related to the same set of facts and . . . could be conveniently be tried together.").

### Timeliness Of Removal

72.    This Notice of Removal was filed with the Clerk of the United States District Court within 30 days after service of the Complaint upon Defendant, which was effectuated on May 28, 2024.   Therefore, this Notice is timely under 28 U.S.C. § 1446(b).  *See Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).

### Notice To Plaintiff

73.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the Superior Court of the State of California in and for the County of Alameda.

### Conclusion

74.    WHEREFORE, for all of the foregoing reasons, APFM hereby removes the State Court Action now pending in the Superior Court of the State of California, County of Alameda, to the United States District Court for the Northern District of California.

Dated:    June 27, 2024              REED SMITH LLP

By:   /s/ Mara D. Curtis
          Mara D. Curtis
          Tanner J. Hendershot
          Attorneys for Defendant
          A PLACE FOR MOM, INC.

REED SMITH LLP

A limited liability partnership formed in the State of Delaware