UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR PINEDO,<br><br>    Plaintiff,<br><br>    v.<br><br>A PLACE FOR MOM,<br><br>    Defendant. | Case No. 24-cv-03875-JCS<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAYING NON-INDIVIDUAL PAGA CLAIMS**<br><br>Re: Dkt. No. 11 |

## I. INTRODUCTION

Plaintiff Hector Pinedo is a former hourly, non-exempt employee of Defendant A Place for Mom ("APFM") and brings wage and hour claims under California law on behalf of a putative class of similarly situated employees. At the outset of his employment, Pinedo signed an arbitration agreement with APFM in which he: 1) agreed that any individual claims he wished to assert against APFM would be subject to arbitration; and 2) waived the right to assert claims against APFM on behalf of others, to the extent permitted by law. Presently before the Court is APFM's Motion to Compel Arbitration and Dismiss or Stay Proceedings ("Motion"). A hearing on the Motion was held on September 4, 2024. Following the hearing, the parties supplied supplemental briefing at the request of the Court. For the reasons stated below, the Motion is GRANTED.[1]

## II. BACKGROUND

### A. Factual Background

Pinedo commenced his employment with APFM on April 10, 2023. Compl. ¶ 14; Pinedo

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

Decl. ¶ 2. At the time Plaintiff was hired and throughout his employment with Defendant, he lived and worked in the state of California. Pinedo Decl. ¶ 5. According to Pinedo, as part of the "onboarding" process, he was required to sign certain "forms and paperwork[,]" including an arbitration agreement ("Arbitration Agreement"). *Id.* ¶¶ 3-4. Pinedo states that he "was told [he] had to sign them" and therefore his "understanding was that [he] did not have the option of trying to negotiate them." Pinedo Decl. ¶ 3. He states that he "believed that if [he] did not sign these documents, [he] would not get the job." *Id.*

Pinedo describes the specific circumstances under which he signed the Arbitration Agreement as follows:

> To the best of my recollection, I was informed that I was required to sign each of these documents at an orientation that took place on April 9, 2023, via Zoom with approximately 15 to 20 other new hires in attendance. During the orientation Defendant's HR Representative dropped a link to each of the documents for all the new hires to access and sign during the orientation by entering their name and last four digits of their social security number without sufficient time for review. During the orientation the HR Representative never explained the documents, including the arbitration agreement. It was my understanding that I did not have the option of trying to negotiate with Defendant. Again, I believed that if I did not sign these documents, I would not get the job. At no time during the orientation was I told that I had time to [sic] I do not recall being made aware that I was waiving my right to proceed with any claims in court. Had I ever been aware that I was waiving my right to bring a claim in court or that I had the option to decline, I would have declined.

*Id.* ¶ 4.

The Arbitration Agreement covers "all claims or controversies ('claims'), past, present or future, whether or not arising out of [Pinedo's] employment' (or its termination), that APFM may have against [Pinedo] or that [Pinedo] (and no other party) may have against" the following:

> (1) APFM, (2) its officers, directors, employees or agents in their capacity as such or otherwise, (3) APFM's parent, subsidiary and affiliated entities, (4) APFM's benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and/or (5) all successors and assigns of any of them.

Compendium of Evidence in Support of its Motion to Compel Arbitration and Dismiss Proceedings, dkt. no. 11-2 ("Compendium"), Ex. 1 (Arbitration Agreement).

Under the heading "Claims Covered by the Agreement[,]" the Arbitration Agreement

2

provides:

> The only claims that are arbitrable are those that are justiciable under applicable federal, state or local law. Arbitrable claims include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims; claims for retaliation or discrimination (including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability or handicap, or medical condition); claims for benefits (except as provided below); claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance (except as provided below).

*Id.*

Under the heading "Claims Not Covered by the Agreement[,]" the Arbitration Agreement provides:

> APFM and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action in any way related to any claim covered by this Agreement, except that this Agreement does not prohibit the filing of or pursuit of relief through the following: (1) a court action for temporary equitable relief in aid of arbitration, where such an action is otherwise available by law, (2) an administrative charge to any federal, state or local equal opportunity or fair employment practices agency, (3) an administrative charge to the National Labor Relations Board, or (4) any other charge filed with or communication to a federal, state or local government office, official or agency (for numbers (2) through (4) collectively, "a Government Complaint").

*Id.*

The Arbitration Agreement contains the following waiver (hereinafter, "class action waiver"):

> To the maximum extent permitted by law, I hereby waive any right to bring on behalf of persons other than myself, or to otherwise participate with other persons in, any class, collective, or representative action. I understand, however, that to the maximum extent permitted by law I retain the right to bring claims in arbitration for myself as an individual (and only for myself). If a court adjudicating a case involving APFM and me were to determine that there is an unwaivable right to bring a representative action, any such representative action shall be brought only in court, and not in arbitration.

*Id.* It also contains a delegation clause that states as follows:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this

3

> Agreement, including but not limited to, any claim that all or any part of this Agreement is void, voidable, or unconscionable. The Arbitrator's decision shall be final and binding upon the parties.

*Id.*

The Arbitration Agreement contains the following provision governing the time to initiate arbitration:

> <u>Time Limits for Commencing Arbitration and Required Notice of All Claims</u>. APFM and I agree that the aggrieved party must give written notice of any claim to the other party no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim. Otherwise, the claim shall be deemed waived. The filing of a Government Complaint shall not extend the statute of limitations for presenting any claim to arbitration. I understand that the aggrieved party is encouraged to give written notice of any claim as soon as possible after the event or events in dispute so that arbitration of any differences may take place promptly.

*Id.*

Under the Arbitration Agreement, "[t]he arbitration will be held under the auspices of JAMS (or its successor) . . . in accordance with the then-current JAMS Employment Arbitration Rules & Procedures (and no other rules), which are currently available at http://www.jamsadr.com/rulesemployment-arbitration." *Id.*; *see also* Defendant's Request for Judicial Notice, dkt. no. 12 ("RJN"), Ex. A (JAMS Employment Arbitration Rules & Procedures ("JAMS Rules").[2] The JAMS Rules provide, *inter alia*, that "[i]n determining the merits of the dispute, the Arbitrator shall be guided by the rules of law agreed upon by the Parties" and that "[i]n the absence of such agreement, the Arbitrator will be guided by the law or the rules of law that he or she deems to be most appropriate." RJN, Ex. A, Rule 24(c). The Arbitration Agreement, in turn, provides that "the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, the laws of the State of Washington shall apply." Arbitration Agreement. It also states that "[t]he Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the State of Washington, or federal law, or both, as applicable to

---

[2] Pinedo does not object to APFM's request for judicial notice of the JAMS Employment Arbitration Rules and Procedures, which is granted under Federal Rule of Evidence 201 because the content of the website "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

4

the claim(s) asserted." *Id*. It further provides that "[t]he Arbitrator is without jurisdiction to apply any different substantive law or law of remedies." *Id*.

The JAMS Rules provide for the award of attorneys' fees "if provided by the Parties' Agreement or allowed by applicable law." *Id.*, Rule 24(g). However, the Arbitration Agreement provides that "[e]ach party shall pay its own litigation costs and attorneys' fees, if any" and that "[n]either party will be able to collect attorneys' fees from the other party." Arbitration Agreement.

The Arbitration Agreement provides that it "shall survive the termination of [Pinedo's] employment and the expiration of any benefit plan." *Id.*

Above the signature line, the Arbitration Agreement includes a provision entitled "voluntary agreement" that states, in all capital letters, as follows:

> I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN APFM AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY APFM OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.
>
> I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.
>
> I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Arbitration Agreement.

Finally, the Arbitration Agreement contains the following provision governing severability:

> <u>Construction and Severability</u>. If any provision of this Agreement is adjudged to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All other provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

*Id.*

### B. Procedural Background

Pinedo asserts the following claims in his complaint: (1) unpaid minimum wages (Cal. Labor Code §§ 1194, 1197, 1197.1); (2) unpaid overtime (Cal. Labor Code §§ 510, 1198); (3) unpaid meal premiums (Cal. Labor Code §§ 226.7, 512(a)); (4) unpaid rest premiums (Cal. Labor Code § 226.7); (5) waiting time penalties (Cal. Labor Code § 201, 202, 203); (6) failure to timely pay wages during employment (Cal. Labor Code § 204); (7) non-compliant wage statements (Cal. Labor Code § 226(a)); (8) failure to provide sick leave at the correct rate of pay (Cal. Labor Code § 246); (9) failure to maintain requisite payroll records (Cal. Labor Code § 1174(d)); (10) violation of the unfair competition laws (Cal. Bus. & Prof. Code §§ 1720 *et seq.*); and (11) civil penalties under the Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq.*

In the Motion, APFM seeks to enforce the Arbitration Agreement, arguing that all of Pinedo's claims should be referred to arbitration on an individual basis, that his class claims should be dismissed and that the non-individual component of his PAGA claim, which is non-arbitrable and must be decided by the Court, should be stayed pending arbitration. Defendant's Memorandum of Points and Authorities in Support of Motion to Compel Arbitration ("APFM Ps&As") at 2.

Pinedo counters that the Arbitration Agreement, including the delegation clause, is both procedurally and substantively unconscionable and therefore cannot be enforced. Opposition at 1-9. He further contends that his California wage and hour claims fall outside of the scope of the Arbitration Agreement, pointing to the provision specifying that "[t]he Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the State of Washington, or federal law, or both, as applicable to the claim(s) asserted[,]" and further providing that "[t]he Arbitrator is without jurisdiction to apply any different substantive law or law of remedies." *Id.* at 9. He notes further that California Labor Code section 925 protects him from the enforcement of the Arbitration Agreement because that section prohibits an employer from requiring a California employee as a condition of employment to agree to a provision that would "[d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Lab. Code § 925, subd. (a)(2). *Id.* at 4.

1   In its Reply, APFM contends the question of whether the Arbitration Agreement is

2   unconscionable must be decided by the arbitrator under the delegation clause because Pinedo's

3   challenge to the enforceability of the Arbitration Agreement relates to the agreement as a whole

4   and does not specifically relate to the delegation clause.  Reply at 1-5.  APFM also rejects

5   Pinedo's argument, based on the choice of law provision in the Arbitration Agreement, that his

6   claims are outside the scope of the Arbitration Agreement because they are based on California

7   law.  *Id.* at 6.  According to APFM, the provision in the Arbitration Agreement cited by Pinedo

8   specifies that Washington law will apply only "as applicable" to the claims asserted and that to the

9   extent Washington law doesn't apply, the JAMS Employment Arbitration Rules and Procedures,

10  which are incorporated into the Arbitration Agreement, allow the arbitrator to apply the law they

11  deem most appropriate which would, in this case, be California law.  *Id.*

12  APFM further asserts that Section 925, cited by Pinedo, actually supports APFM's position

13  because it provides that if the claim arises in California, then California law must apply and a

14  choice of law provision to the contrary is voided.  *Id.* at 6-7.  Thus, APFM asserts, "if the choice of

15  law provision is read as saying Washington law applies, it is simply not enforced." *Id.*  Because

16  the choice of law provision would simply be severed from the Arbitration Agreement under

17  Section 925, APFM asserts, that section makes the Arbitration Agreement enforceable under

18  California law.  *Id.* at 7.   Finally, APFM rejects Pinedo's argument that the Arbitration

19  Agreement is substantively and procedurally unconscionable.  *Id.*  at 7-14.

20  
21  **III.   ANALYSIS**

    **A.   General Legal Standards Governing Enforcement of Arbitration Agreements
22        Under the Federal Arbitration Act**

23  Under the Federal Arbitration Act ("FAA"), a "written provision in . . . a contract

24  evidencing a transaction involving commerce to settle by arbitration a controversy thereafter

25  arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save

26  upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

27  The FAA "was created to counter prevalent judicial refusal to enforce arbitration agreements . . .

28  and has been interpreted to embody 'a liberal federal policy favoring arbitration.'" *Mortenson v.*

United States District Court
Northern District of California

*Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. at 339). Thus, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

In deciding whether to enforce an arbitration agreement, the court is limited to addressing "gateway" issues, namely, "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Further, "[i]t is well-established that some 'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement." *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 634–35 (9th Cir. 2021) (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). However, challenges that go to the question of contract formation may not be delegated to the arbitrator; instead, "a court should order arbitration only if it is convinced an agreement has been formed." *Id.* at 635 (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-300 (2010)). The Supreme Court has explained that this is because "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Granite Rock Co.*, 561 U.S. at 299 (2010) (internal quotation marks omitted)).

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). However, the Court has "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clea[r] and unmistakabl[e]" evidence that they did so." *Id.* (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether

1  the parties agreed to arbitrate is to be decided by the court, not the arbitrator.")). "Even if a

2  delegation of arbitrability is clear and unmistakable it may be found unenforceable if the

3  delegation itself is unconscionable." *Saravia v. Dynamex, Inc*., 310 F.R.D. 412, 419 (N.D. Cal.

4  2015) (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–74 (2010)).

5        Thus, "when presented with a contract that includes both an arbitration provision and a

6  delegation provision, a reviewing court can consider three types of challenges: (1) formation

7  challenges to the delegation provision, *see Ahlstrom*, 21 F.4th at 635; (2) validity and

8  enforceability challenges to the delegation provision, *see* [*Bielski v. Coinbase, Inc*., 87 F.4th 1003,

9  1009 (9th Cir. 2023)]; and (3) formation challenges to the underlying arbitration provision, *see*

10  *Ahlstrom*, 21 F.4th at 635." *Davenport v. Nvidia Corp*., No. 23-CV-01877-PCP, 2024 WL

11  832387, at *2 (N.D. Cal. Feb. 28, 2024). The court can consider validity or enforceability

12  challenges to the underlying arbitration provision only if the delegation provision is found to be

13  invalid. *Id.*

14     **B.**    **Is the Delegation Provision Enforceable?**

15        **1. Should the Court or the Arbitrator Decide if the Delegation Provision is Unconscionable**

16      As a threshold matter, the Court must decide if Pinedo *specifically* challenges the

17  enforceability of the delegation provision or instead, only challenges the enforceability of the

18  arbitration agreement as a whole. Under *Rent–A–Center, West, Inc. v. Jackson*, the challenge is

19  for the Court to decide in the former scenario, whereas the latter type of challenge is for the

20  arbitrator to decide. *Saperstein v. Thomas P. Gohagan & Co*., 476 F. Supp. 3d 965, 975 (N.D.

21  Cal. 2020) (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 71-74 (2010)). The Court

22  finds that Pinedo has asserted a specific challenge to the delegation clause based on

23  unconscionability and therefore, that that challenge should be decided by the Court.

24      In *Rent-a-Center*, the Supreme Court announced the rule that challenges to the validity of

25  an arbitration agreement as a whole should be decided by the arbitrator but that specific challenges

26  to the validity of a delegation provision should be addressed by the court. 561 U.S. at 71-74. In

27  that case, the plaintiff opposed a motion to compel arbitration on the basis that the entire

28

arbitration agreement – which contained a delegation provision – was unconscionable because it was one-sided, contained an unfair fee-splitting arrangement and limited discovery. *Id.* at 73-74. He "did not make any arguments specific to the delegation provision[.]" *Id.* at 74. The Court concluded that because the plaintiff "did not contest the validity of the delegation provision in particular[,]" the district court had erred in deciding that the arbitration agreement was unconscionable rather than leaving that determination to the arbitrator. *Id.* at 76.

In *Rent-a-Center*, the Supreme Court recognized that a *specific* challenge to a delegation provision should be decided by the court rather than the arbitrator, stating as follows:

> Jackson's other two substantive unconscionability arguments assailed arbitration procedures called for by the contract—the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under both the agreement to arbitrate employment-related disputes and the delegation provision. It may be that had Jackson challenged the delegation provision by arguing that these common procedures as applied to the delegation provision rendered that provision unconscionable, the challenge should have been considered by the court. To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.

*Id.*

In *Bielski v. Coinbase, Inc.*, the Ninth Circuit addressed "what a party must do to specifically challenge a delegation provision to ensure that a court can review its challenge." 87 F.4th 1003, 1008 (9th Cir. 2023). The court "distill[ed] *Rent-A-Center* into two principles." *Id.* at 1009. "First, a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments attacking the provision in its opposition to a motion to compel arbitration." *Id.* "Second, a party may challenge the delegation provision and the arbitration agreement for the same reasons, so long as the party specifies why each reason renders the specific provision unenforceable." *Id.* at 1009-1010. The court explained that "[t]here are many reasons why a party may be required to use nearly identical challenges to the delegation

10

provision and the arbitration agreement as a whole" and found that "nothing in *Rent-A-Center* requires fashioning completely distinct arguments." *Id.* To the contrary, the court found, *Rent-a-Center* "suggests that if the plaintiff had argued the procedures rendered both the delegation provision and the arbitration agreement unconscionable, the court should have considered the challenge." *Id.* (citation omitted). Thus, the Ninth Circuit in *Bielski* concluded that *Rent-a-Center* imposes a "relatively low barrier to entry" with respect to making a specific challenge to a delegation provision. *Id.* at 1010.

Reading *Rent-a-Center* and *Bielski* together, the Court finds that Pinedo has specifically challenged the validity of the delegation provision in the Arbitration Agreement by arguing that that provision is both procedurally and substantively unconscionable, citing both the circumstances under which the agreement was entered into and the choice of law provision that Pinedo contends prevents him from arguing before the arbitrator that the contract was unconscionable under California law. Opposition at 3-4 (citing, *inter alia*, *Pinela v. Neiman Marcus Group, Inc.*, 238 Cal.App.4th 227, 243-244 (2015); Cal. Lab. Code § 925, subd. (a)(2)). This specific challenge must be decided by the Court. *See Harris v. Pac. Gas & Elec. Co.*, No. 21-CV-04096-JCS, 2022 WL 16637987, at *8 (N.D. Cal. Nov. 2, 2022) (addressing challenge to delegation provision on the merits rather than leaving that question to the arbitrator where the plaintiff specifically challenged the delegation provision as unconscionable).

### 2. Is the Delegation Provision Unconscionable[3]

"Before a federal court may apply state-law principles to determine the validity of an arbitration agreement, it must determine which state's laws to apply." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). In the parties' briefs, both sides relied on California law to support their arguments related to unconscionability and at the motion hearing, they expressly stipulated that California law applies to the question of whether the delegation provision is unconscionable.

---

[3] The parties are in agreement that the delegation provision in the Arbitration Agreement clearly and unmistakably delegates to the arbitrator questions of arbitrability, including whether the Arbitration Agreement is unconscionable. Therefore, the enforceability of the delegation provision turns on whether it is valid.

11

1	California law provides that "[a] contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *OTO, L.L.C. v. Kho*, 8 Cal.5th 111, 125 (2019)). Under this standard, unconscionability "has both a procedural and a substantive element." *Id*. "The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreements actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012)). The question of whether an agreement is unconscionable is "highly dependent on context." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (2015). "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." *Id.*

Here, the Court finds that Pinedo has failed to establish that the delegation provision is substantively unconscionable and therefore, it does not reach the question of procedural unconscionability. The crux of Pinedo's argument with respect to substantive unconscionability is that "the incorporation of Washington law . . . would prevent plaintiff from arguing the contract was unconscionable under California law." Opposition at 4. Pinedo relies on *Pinela v. Neiman Marcus Group, Inc.*, in which the court found that a delegation provision in an arbitration agreement was substantively unconscionable where the arbitration agreement contained a choice of law provision that deprived the plaintiff (who was a California resident) of the right to challenge the validity of the arbitration agreement under California law governing unconscionability. 238 Cal.App.4th 227, 243-244 (2015).

Pinedo's argument fails, however, because in this case, in contrast to *Pinela*, the choice of law provision does not preclude the arbitrator from applying California law of unconscionability in determining whether the Arbitration Agreement is valid. Instead, the provision specifying that Washington law applies is limited to "substantive law." As the Arbitration Agreement also incorporates the JAMS Employment Arbitration Rules & Procedures, which permit the arbitrator to apply "the law or the rules of law that he or she deems to be most appropriate" where the parties

12

have not agreed to the application of a particular jurisdiction's law, *see* RJN, Ex. A, Rule 24(c), the Court concludes that the arbitrator can apply California law of unconscionability to address Pinedo's challenges to the validity of the Arbitration Agreement (as did the parties in briefing the instant Motion) if appropriate.

Accordingly, the Court concludes that the delegation provision is valid.

### C.   Are Plaintiff's Claims Within the Scope of the Arbitration Agreement

Another gateway issue the Court must decide, regardless of whether or not the delegation provision is enforceable, is whether the parties entered into an actual agreement to arbitrate Pinedo's claims. As discussed above, because this goes to contract formation, this question cannot be delegated to the arbitrator. The Court concludes that Pinedo's claims fall within the scope of the agreement and therefore that they are subject to arbitration.

The Ninth Circuit has explained that in determining whether a dispute falls within the scope of an arbitration agreement, the court must "look to the content of the arbitration clause" and then consider whether the dispute "relates to the contract" by examining the factual allegations in the complaint. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023). "The issue is 'whether the factual allegations underlying [the claims] are within the scope of the arbitration clause, whatever the legal labels attached to those allegations.'" *Id.* (quoting *Mitsubishi Motors Cor*p., 473 U.S. at 622 n.9 (citation omitted)).

Here, the language in the Arbitration Agreement is broad, stating that "APFM and I mutually consent to the resolution by arbitration of all claims or controversies . . . , past, present or future, whether or not arising out of my employment (or its termination), that APFM may have against me or that I (and no other party) may have against" APFM. Moreover, it expressly states that "claims for wages or other compensation due" are covered by the Arbitration Agreement. Thus, the factual allegations underpinning Pinedo's wage and hour claims, which are based on failure to pay minimum wages and overtime, among other things, fit within the scope of this provision.

Pinedo argues that his claims fall outside of the scope of the Arbitration Agreement because they are asserted under California law, citing the provision in the Arbitration Agreement

13

stating that the arbitrator is "without jurisdiction to apply any different substantive law" than "the law of the State of Washington, or federal law, or both, as applicable to the claim(s) asserted." The Court finds that this reading of the Arbitration Agreement is incorrect because it ignores the qualifying term "as applicable." As APFM acknowledges, neither federal law nor Washington law is applicable to Pinedo's substantive claims. This, however, does not mean the arbitrator cannot adjudicate Pinedo's claims. Rather, the JAMS provision allowing the arbitrator to apply whatever law he or she deems appropriate in the absence of an agreement by the parties, cited above, allows the arbitrator to apply California substantive law to Pinedo's claims. Therefore, the Court rejects Pinedo's argument that his claims fall outside of the scope of the Arbitration Agreement for this reason.

## IV.   CONCLUSION

For the reasons stated above, the Motion is GRANTED. Plaintiff shall submit all of the individual claims asserted in the Complaint to arbitration in accordance with the Arbitration Agreement. Plaintiff's class claims are dismissed. Plaintiff's non-individual PAGA claims shall be stayed pending completion of the arbitration of Plaintiff's individual claims. The Case Management Conference set for **October 30, 2023 is vacated**. A status conference will be held by Zoom webinar on **April 30, 2025 at 2:00 p.m.** All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/jcs. The parties shall submit a joint status report by **April 23, 2025.**

**IT IS SO ORDERED.**

Dated: October 24, 2024

JOSEPH C. SPERO
United States Magistrate Judge